**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

JEFFREY CLYDE JOBE,

        Plaintiff,

        v.

ALASKA DEPARTMENT OF CORRECTIONS HEALTH SERVICES, *et al.*,

        Defendants.

Case No. 3:20-cv-00245-SLG-KFR

**REPORT AND RECOMMENDATION RE MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment (hereinafter "Motion") filed by Defendants Alaska Department of Corrections Health Services, Certified Physician's Assistant ("PA-C") Yolanda Garroutte;[1] Dr. Martha Moore, M.D.; and Superintendent Chris Lyou.[2] Plaintiff Jeffrey Clyde Jobe, proceeding *pro se*, did not file a response to the Motion. Because Plaintiff has not produced any evidence to rebut Defendants' showing that no genuine dispute of material fact exists and that they are entitled to judgment as a matter of law, the Court recommends that the Motion be **GRANTED** and that Plaintiff's claims be **DISMISSED with prejudice**.

**I.    BACKGROUND**

Plaintiff is a former inmate who was housed at Anchorage Correctional Complex ("ACC") while a federal criminal case against him was pending.[3] In

---

[1] Plaintiff's Complaint refers to this Defendant as PA-C Cotton; Defendants advise that this is PA-C Garroutte's former name. Doc. 40 at 1.

[2] Docs. 39; 40.

[3] Doc. 1 at 1; *see also* Doc. 25. The Court takes judicial notice that Plaintiff was a defendant in a federal criminal case in the District of Alaska. *See United States v. Jobe*, No. 3:18-cr-00081-SLG; *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (noting that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct

September 2020, Plaintiff filed a Complaint against Defendants pursuant to 42 U.S.C. § 1983.[4] In the Complaint, Plaintiff asserts three claims. First, Plaintiff claims that on or about October 8, 2018, PA-C Garroutte violated his constitutional right to adequate medical care by refusing to prescribe him CBD oil to treat his longstanding seizure disorder and by prescribing him Lamictal instead.[5] Plaintiff alleges that this medication caused him to suffer more seizures as well as various "severe[,] nearly fatal" side effects.[6] Second, Plaintiff claims that on or about March 20, 2019, Dr. Moore violated his constitutional right to be free from cruel and unusual punishment by discontinuing his Lamictal prescription and placing him in administrative segregation even though he "had done nothing wrong."[7] And third, Plaintiff claims that on or about October 8, 2019, Superintendent Lyou violated his constitutional right to adequate medical care during an incident where Plaintiff was allegedly moved to ACC's medical unit, placed in a bed with blankets that were covered in someone else's blood, and denied a shower after Plaintiff realized what had happened.[8]

In November 2023, Defendants filed the Motion, requesting summary judgment on Plaintiff's three claims.[9] Defendants contend that they are entitled to summary judgment because there is no dispute of material fact that: (1) PA-C Garroutte did not act with deliberate indifference as to Plaintiff's medical needs because her prescription decisions were objectively reasonable and did not actually cause Plaintiff harm or place him at a substantial risk of serious harm; (2) Dr. Moore did not act with deliberate indifference as to Plaintiff's medical needs or conditions

---

relation to matters at issue" (citation and internal quotation marks omitted)). Plaintiff was indicted in that case in July 2018 and sentenced in November 2019. *Jobe*, No. 3:18-cr-00081-SLG, Docs. 1; 50.
[4] Doc. 1.
[5] *Id.* at 3.
[6] *Id.*
[7] *Id.* at 4.
[8] *Id.* at 5.
[9] Doc. 39.

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR
2

Case 3:20-cv-00245-SLG-KFR   Document 46   Filed 02/06/24   Page 2 of 14

of confinement because she did not personally discontinue Plaintiff's Lamictal prescription or assign him to administrative segregation; and (3) Superintendent Lyou did not act with deliberate indifference as to Plaintiff's conditions of confinement because he was not personally involved in the bloody blankets incident.[10] In the alternative, Defendants maintain that summary judgment is appropriate on qualified immunity grounds.[11] In support of the Motion, Defendants filed records documenting Plaintiff's bed assignment history at ACC, Plaintiff's medical history, and Plaintiff's admission to ACC's medical segregation unit.[12] Defendants also filed declarations by Superintendent Lyou and by expert witness Dr. Robert Lawrence, Chief Medical Officer for the Department of Corrections ("DOC").[13]

Plaintiff did not file a response to the Motion within 21 days of service, as the Local Civil Rules for the District of Alaska require.[14] Because Plaintiff is representing himself in this matter, the Court issued an order giving notice to Plaintiff that failure to file an opposition to the Motion could lead to entry of summary judgment against him, which would result in dismissal of this action.[15] The Court gave Plaintiff 21 additional days from the date of that order to respond to the Motion.[16] Plaintiff did not file a response by that deadline. As of the date of this Report and Recommendation, Plaintiff still had not filed any response to the Motion.

II. **LEGAL STANDARD**

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[10] Doc. 40 at 16–21, 25–32, 36–38.
[11] *Id.* at 21–25, 33–35, 38–41.
[12] Docs. 40-1; 40-2; 40-3.
[13] Docs. 41; 42.
[14] *See* L. Civ. R. 7.2(b)(1).
[15] Doc. 45. *See Rand v. Rowland*, 154 F.3d 952, 953 (9th Cir. 1998) (affirming "the continued viability and application of the 'pro se prisoner fair notice' requirement of Rule 56 . . . [as] adopted in *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988)).
[16] *Id.* at 2.

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR
3

Case 3:20-cv-00245-SLG-KFR    Document 46    Filed 02/06/24    Page 3 of 14

matter of law."[17] A fact is "material" if it might affect the outcome of the case under the governing law.[18] A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable fact-finder to decide in favor of the nonmoving party.[19] In determining whether a genuine dispute of material fact exists, the court views the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party.[20]

The party moving for summary judgment bears the ultimate burden of persuasion and the initial burden of producing evidence that shows the absence of a genuine issue of material fact.[21] Where the moving party would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."[22] "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything."[23]

If a moving party successfully carries its burden of production, however, the nonmoving party "must produce evidence to support its claim or defense."[24] The nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment."[25] "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion

---

[17] Fed. R. Civ. P. 56(a).
[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *United States v. Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2009).
[19] *Anderson*, 477 U.S. at 248; *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010).
[20] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).
[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).
[22] *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).
[23] *Id.* at 1102–03.
[24] *Id.* at 1103.
[25] *Id.*

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR
4

Case 3:20-cv-00245-SLG-KFR    Document 46    Filed 02/06/24    Page 4 of 14

for summary judgment."[26]

III. DISCUSSION

Plaintiff brings his claims under 42 U.S.C. § 1983, which provides that

> [e]very person who, under color of [State law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To prevail on a § 1983 claim, a plaintiff must establish two "essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."[27] The Court examines each of Plaintiff's three claims in turn.[28]

### A. PA-C Garroutte Did Not Violate Plaintiff's Constitutional Right to Adequate Medical Care.

Plaintiff challenges PA-C Garroutte's provision of medical care to him under the Fourteenth Amendment, alleging that PA-C Garroutte: (1) failed to prescribe him with CBD oil, which Plaintiff was using to control his seizure disorder before his incarceration; and (2) instead prescribed him Lamictal, an anti-seizure medication that caused Plaintiff to experience more seizures and side effects such as bleeding,

---

[26] *Id.* at 1102.
[27] *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).
[28] Plaintiff includes Defendant Alaska Department of Corrections Health Services in the caption of his Complaint, though he does not reference this Defendant elsewhere in the pleading. Doc. 1 at 1. To the extent that Plaintiff wishes to sue this Defendant state agency, it is immune from suit pursuant to the Eleventh Amendment of the U.S. Constitution. *See Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (explaining that states have sovereign immunity pursuant to the Eleventh Amendment, and that "[t]he Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants"); *see also Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014) ("Congress could abrogate [sovereign] immunity, but it has not done so for cases brought under 42 U.S.C. § 1983.").

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR

5

Case 3:20-cv-00245-SLG-KFR   Document 46   Filed 02/06/24   Page 5 of 14

headaches, and rashes.[29]  To succeed on a Fourteenth Amendment claim for a violation of the right to adequate medical care, a plaintiff must establish that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.[30]

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'"[31]

Defendants argue that PA-C Garroutte is not liable because her decisions did not place Plaintiff at substantial risk of suffering serious harm, were not objectively unreasonable, and did not cause Plaintiff's seizures.[32]  Defendants provide expert

---

[29] Doc. 1 at 3. Plaintiff indicates that he is bringing this claim under the Eighth Amendment. *Id.* However, because the events underlying this claim occurred before Plaintiff had been convicted of any crime in his federal criminal case, the claim is properly brought under the Fourteenth Amendment, not the Eighth Amendment. *See Jobe*, No. 3:18-cr-00081-SLG, Doc. 41 (indicating that the District Court accepted Plaintiff's guilty plea in his federal criminal case on July 8, 2019. *See Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (holding that if an inmate is a pretrial detainee, any claims against prison officials for injuries suffered while in custody "arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause."); *see also Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016). The Fourteenth Amendment prohibits punishment "prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

This distinction between the Eighth and the Fourteenth Amendment determines the analytical framework used to evaluate Plaintiff's claim. To prevail on an Eighth Amendment claim against a prison official for injuries suffered while in custody, a plaintiff must prove that the official "*subjectively* ha[d] a sufficiently culpable state of mind. *See Gordon*, 888 F.3d at 1125 n.4. In contrast, to prevail on such a claim under the Fourteenth Amendment, a plaintiff must prove only "objective" deliberate indifference. *Gordon*, 888 F.3d at 1124–25.

[30] *Gordon*, 888 F.3d at 1125.
[31] *Id.* (quoting *Castro*, 833 F.3d at 1071).
[32] Doc. 40 at 16–21.

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR
6

Case 3:20-cv-00245-SLG-KFR    Document 46    Filed 02/06/24    Page 6 of 14

testimony from Dr. Lawrence to demonstrate that PA-C Garroutte's decisions were not objectively unreasonable. Dr. Lawrence explains that PA-C Garroutte added a Lamictal prescription to Plaintiff's seizure treatment plan after Plaintiff had experienced multiple seizures while taking the maximum dosage of Keppra, another anti-seizure medication.[33] Dr. Lawrence testifies that PA-C Garroutte "correctly identified that the Keppra prescription had not prevented [Plaintiff's] seizure activity and correctly prescribed [Lamictal as] a second antiepileptic medication with a different chemical mechanism than Keppra."[34] Dr. Lawrence further testifies that PA-C Garroutte's denial of Plaintiff's request to treat his seizure disorder with CBD oil was appropriate because "[m]edications derived from CBD oil are only FDA approved for certain well-defined seizures, none of which had been diagnosed in [Plaintiff]," and because "CBD oil is known to interact with other anti-epileptic medications" such as those Plaintiff had been prescribed.[35] Accordingly, Dr. Lawrence concludes that PA-C Garroutte's decisions as to Plaintiff's seizure disorder were "within the expected standard of care for her role as a physician's assistant treating someone with a medical condition such as [Plaintiff's] seizure disorder."[36]

The Court finds that Dr. Lawrence's declaration is sufficient to show that PA-C Garroutte's decisions with respect to Plaintiff's seizure disorder were not objectively unreasonable. Because Defendants have carried their burden of production to negate this element of Plaintiff's claim, Plaintiff must produce evidence to create a genuine issue of material fact as to whether PA-C Garroutte's decisions were objectively unreasonable.[37] Plaintiff has failed to produce any such evidence. Therefore, Defendants are entitled to summary judgment on Plaintiff's

---

[33] Doc. 41 at 3.
[34] *Id.*
[35] *Id.* at 3–4.
[36] *Id.* at 4.
[37] *See Nissan Fire & Marine Ins.*, 210 F.3d at 1103.

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR

7

Case 3:20-cv-00245-SLG-KFR     Document 46     Filed 02/06/24     Page 7 of 14

claim against PA-C Garroutte.[38]

### B. Dr. Moore Did Not Violate Plaintiff's Constitutional Rights to Adequate Medical Care and Non-Punitive Conditions of Confinement.

Plaintiff next challenges the decisions to discontinue his Lamictal prescription and to subsequently place him in administrative segregation under the Fourteenth Amendment, attributing these decisions to Dr. Moore.[39] The elements of a Fourteenth Amendment claim for a violation of the rights to humane conditions of confinement are identical to those applicable to a Fourteenth Amendment claim for a violation of the right to adequate medical care.[40] Namely, as explained above, a plaintiff must prove that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.[41]

With respect to the first element, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard."[42]

Defendants argue that Dr. Moore is not liable because she did not make an intentional decision to discontinue Plaintiff's Lamictal prescription or to assign Plaintiff to any housing unit at ACC.[43] As to the Lamictal decision, Dr. Lawrence testifies that there is no evidence in Plaintiff's medical records that Dr. Moore made

---

[38] Because the Court finds that Plaintiff's constitutional rights were not deprived because of PA-C Garroutte's conduct, the Court need not address Defendants' alternative claim of qualified immunity.
[39] Doc. 1 at 4. This claim is properly brought under the Fourteenth Amendment because the underlying events occurred while Plaintiff was still a pretrial detainee.
[40] *See supra* note 30 and accompanying text.
[41] *Gordon*, 888 F.3d at 1125.
[42] *Id.* (quoting *Castro*, 833 F.3d at 1071).
[43] Doc. 40 at 25–30.
R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR
8

Case 3:20-cv-00245-SLG-KFR    Document 46    Filed 02/06/24    Page 8 of 14

or participated in that decision.[44] Even if Dr. Moore had made that decision, Defendants contend, that decision was not objectively unreasonable because Plaintiff "was being titrated [at that time] on another anti-seizure medication, Tegretol, which has the same mechanism of action as Lamictal."[45]

As to Plaintiff's housing assignment decision, Defendants first clarify that Plaintiff was placed in medical segregation, as opposed to any other form of administrative segregation.[46] Defendants next argue that Dr. Moore, as a medical professional, did not have the authority to make housing decisions for inmates.[47] Defendants rely on Superintendent Lyou's declaration, in which he testifies that, as a general matter, "housing assignments at ACC are made by security personnel, not medical personnel," and in this specific case, he assigned Plaintiff to the medical segregation unit.[48] Defendants also point to Plaintiff's medical records, which contain a medical note from Dr. Moore to Plaintiff explaining that she "was not [his] lead health provider" and that his post-medical-unit-admission requests for information related to housing "ha[d] been directed to the Assistant Superintendent at th[e] facility, since he is the officer who makes administrative housing decisions."[49]

The Court finds that Defendants have both properly identified a lack of evidence showing that Dr. Moore did not personally participate in the decision to discontinue Plaintiff's Lamictal prescription, and produced evidence sufficient to show that Dr. Moore did not personally participate in the decision to assign Plaintiff

---

[44] Doc. 41 at 4.
[45] *Id.*
[46] Doc. 40 at 28–29. Contrary to Defendants' assertions, it appears from the record that medical segregation is a type—rather than an entirely separate category—of administrative segregation. *See* Docs. 40-1 at 3; 40-3.
[47] Doc. 40 at 29.
[48] Doc. 42 at 2.
[49] Doc. 40-2 at 1.

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR

9

Case 3:20-cv-00245-SLG-KFR   Document 46   Filed 02/06/24   Page 9 of 14

to medical segregation.[50]  Without personal participation in these decisions, Dr. Moore cannot have made an "intentional decision" that subjected Plaintiff to a violation of his constitutional rights.  Plaintiff has not presented any evidence beyond the pleadings to establish a genuine issue of material fact as to how Dr. Moore personally participated in either decision.  Therefore, Defendants are entitled to summary judgment on Plaintiff's claim against Dr. Moore.[51]

### C. Superintendent Lyou Did Not Violate Plaintiff's Constitutional Right to Adequate Medical Care.

Plaintiff's third claim focuses on the incident where he was temporarily placed in ACC's medical unit and given a bed with blankets covered in someone else's blood.[52]  Plaintiff alleges that after he realized that the blankets were bloody, the responding correctional officers denied him a shower and initially denied him a set of clean clothes.[53]  Plaintiff implies that this incident may have led him to suffer a blood infection.[54]  Plaintiff asserts this medical care or conditions of confinement claim against Superintendent Lyou.[55]

Defendants maintain that Superintendent Lyou is not liable because he not

---

[50] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

[51] As Defendants point out, Plaintiff's Complaint does not appear to allege that Superintendent Lyou is liable for the decision to assign him to medical segregation. *See* Docs. 1 at 4; 40 at 30.  To the extent that Plaintiff does assert this claim against Superintendent Lyou, the Court agrees with Defendants that the decision to assign Plaintiff to medical segregation was not objectively unreasonable. *See* Doc. 40 at 30–32. Defendants have produced evidence demonstrating that the decision was based on Superintendent Lyou's determination that the medical segregation unit was the only unit capable of meeting the monitoring and caregiving requirements Dr. Moore had informed him were necessary to safely house Plaintiff.  Docs. 40-2 at 1; 42 at 2.  These requirements and the limitations of the medical segregation unit necessarily resulted in the restriction of some of Plaintiff's liberties: access to the gym, communal meals, and group programs. *See* Doc. 42 at 2.  In addition, because the Court finds that Plaintiff's constitutional rights were not deprived as a result of Dr. Moore or Superintendent Lyou's conduct, the Court need not address Defendants' alternative claim of qualified immunity.

[52] Doc. 1 at 5.

[53] *Id.*

[54] *Id.*

[55] *Id.*

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR

10

only did not personally participate in the alleged events, but he also was "wholly unaware" that they had occurred.[56] Defendants point out that Plaintiff's Complaint does not contain any allegations that Superintendent Lyou was involved at any point during the incident.[57] Defendants further state that neither Plaintiff's institutional file nor his medical records contain evidence that the alleged incident occurred.[58] Defendants assert that the only available evidence as to Superintendent Lyou's knowledge of the events is his testimony that he "would only become aware of . . . an incident [in a cell] if it resulted in the creation of a disciplinary report or led to an inmate filing a grievance," neither of which occurred in this instance.[59] Thus, Defendants argue, there is no genuine dispute of material fact that Superintendent Lyou was not aware of the alleged incident, which means that he cannot be liable for any constitutional violation under § 1983.[60]

The parties do not explicitly address whether Plaintiff was a "pretrial detainee" or a "convicted prisoner" at the time of the alleged incident, which took place after the District Court's acceptance of Plaintiff's guilty plea in his federal criminal case but before sentencing in that case.[61] This distinction affects whether

---

[56] Doc. 40 at 36–38.
[57] *Id.* at 36.
[58] *Id.*
[59] Doc. 42 at 2.
[60] Doc. 40 at 37–38.
[61] *See* Doc. 1 at 5; *Jobe*, No. 3:18-cr-00081-SLG, Doc. 50; *see also Bell*, 441 U.S. at 535 n.16, 545 (using terms "convicted prisoner" and "sentenced inmate" interchangeably in distinguishing these individuals from "pretrial detainees," and explaining that while "[d]ue process requires that a pretrial detainee not be punished[,] [a] sentenced inmate . . . may be punished . . . that punishment may not be 'cruel and unusual' under the Eighth Amendment"); *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (holding that inmate asserting Fifth Amendment due process violations that occurred after pleading guilty but before sentencing should be treated as a "sentenced inmate" instead of a "pretrial detainee" for purposes of analyzing the constitutional claims, citing out-of-circuit case law drawing the same distinction when determining whether Eighth Amendment or Fourteenth Amendment governs); *United States v. Patterson*, 381 F.3d 859, 866 (9th Cir. 2004) (holding that the defendant was "properly convicted" of an offense and that double jeopardy therefore attached when the district court accepted the defendant's valid guilty plea, describing the conviction as having "necessarily ensued from [the] guilty plea").

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR
11

Case 3:20-cv-00245-SLG-KFR   Document 46   Filed 02/06/24   Page 11 of 14

Plaintiff's claim is properly considered an Eighth Amendment claim or a Fourteenth Amendment claim.[62] Defendants evaluate Plaintiff's claim under the Eighth Amendment framework, suggesting that they believe Plaintiff was a pretrial detainee at the relevant time.[63]

As with a Fourteenth Amendment conditions of confinement claim brought by a pretrial detainee, an Eighth Amendment conditions of confinement claim brought by a convicted prisoner requires a showing that the defendant prison official acted with deliberate indifference.[64] But whereas the Fourteenth Amendment inquiry is "purely objective," the Eighth Amendment inquiry contains a subjective element, requiring a plaintiff to prove that the defendant subjectively had "a sufficiently culpable state of mind."[65] "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official [actually] knows of and disregards an excessive risk to inmate health or safety."[66]

The Court need not decide whether Plaintiff's claim is an Eighth or Fourteenth Amendment claim because, in any case, Plaintiff's failure to produce any evidence of Superintendent Lyou's knowledge of or participation in the alleged incident is dispositive. Defendants have produced evidence sufficient to show that Superintendent Lyou was not aware of and thus could not have personally participated in or caused any conduct that subjected Plaintiff to unsafe conditions of confinement or inadequate medical care.[67] Evidence of such knowledge or personal involvement is a required element of Plaintiff's claim, regardless of whether it is an

---

[62] *See supra* note 29.
[63] *See* Doc. 40 at 36–38.
[64] *See Gordon*, 888 F.3d at 1125 n.4.
[65] *Castro*, 833 F.3d at 1070–71 (internal quotation marks omitted) (quoting *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002)).
[66] *Gordon*, 888 F.3d at 1125 n.4 (quoting *Estate of Ford*, 301 F.3d at 1049).
[67] *See Taylor*, 880 F.2d at 1045.

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR
12

Case 3:20-cv-00245-SLG-KFR   Document 46   Filed 02/06/24   Page 12 of 14

1 Eighth or Fourteenth Amendment claim.

2 In addition, personal involvement is a necessary element if Plaintiff's claim is brought under a supervisory liability theory.[68] A supervisory official cannot be vicariously liable under § 1983 for the actions of their employees, though they may be liable for their own misconduct if they are an "integral participant" in the alleged constitutional deprivation.[69] A supervisory official may be liable as an integral participant only if "(1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant sets in motion a series of acts by others which the defendant knows or reasonably should know would cause others to inflict the constitutional injury."[70] Plaintiff has failed to produce any evidence to create a genuine issue of material fact as to Superintendent Lyou's knowledge of or personal involvement in giving Plaintiff bloody blankets or in responding to the incident. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim against Supervisor Lyou.[71]

//
//
//
//
//
//

---

[68] *See Gordon*, 888 F.3d at 1125 n.4

[69] *See Peck v. Montoya*, 51 F.4th 877, 889–90 (9th Cir. 2022); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("[W]hen a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates.").

[70] *Peck*, 51 F.4th at 889 (internal quotation marks and alterations omitted).

[71] Because the Court finds that Plaintiff's constitutional rights were not deprived as a result Superintendent Lyou's conduct, the Court need not address Defendants' alternative claim of qualified immunity.

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
2:20-cv-00245-SLG-KFR
13

Case 3:20-cv-00245-SLG-KFR    Document 46    Filed 02/06/24    Page 13 of 14

**IV. CONCLUSION**

In sum, Defendants have met their burden of showing that there exists no genuine issue of material fact and that they are entitled to judgment as a matter of law with respect to each of Plaintiff's claims. The Court therefore recommends that the Motion be **GRANTED** and that Plaintiff's claims be **DISMISSED with prejudice**.

DATED this 5th day of February, 2024 at Anchorage, Alaska.

/s/ *Kyle F. Reardon*
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

**NOTICE OF RIGHT TO OBJECT**

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[72] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's order.[73]

A party may file written objections to the magistrate judge's order within 14 fourteen days.[74] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[75]

---

[72] 28 U.S.C. § 636(b)(1)(B).
[73] *Id.* § 636(b)(1)(C).
[74] *Id.*
[75] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

R&R re Motion for Summary Judgment
*Jobe v. DOC Health Servs., et al.*
3:20-cv-00245-SLG-KFR
14

Case 3:20-cv-00245-SLG-KFR   Document 46   Filed 02/06/24   Page 14 of 14